Okay, Mr. Lombardi, whenever you're ready. That's all right. Take your time. Good morning, Your Honor. May it please the Court. I'm Robert Lombardi, representing Schlumberger Technology Corporation. This matter comes to the Court on STC's petition for interlocutory appeal. The primary issue is whether STC properly classified as directional drillers or DDs as exempt, or more specifically, whether STC's 29 CFR 541.602A compliance salary is subject to the found at 504604B. And STC also takes issue with a number of the district court's other rulings as well. The district court framed the issue as whether two published decisions by this court control the outcome of the DD collective, Gentry v. Hamilton Riker IT Solutions and Venable v. Smith International. Deciding the reasonable relationship issue will decide the DD's claims and should result in the dismissal of all the DDs. The DDs received an annual salary of $47,000 paid at $1,826 bi-weekly, or $913 per week. This is undisputed. So generally speaking, what percentage of their total pay would that represent? Your Honor, that would vary significantly over the course of time. I understand that, and I'm not tying you down to anything specific except just give us a general idea of how much of one's total pay that figure that you just gave us would represent, ranging from what to what? Your Honor, ranging from 60% to 80% of the total pay would be the bonuses, not the salary. So the remainder would be the best salary. And the DDs receive the annual salary, and that's undisputed. That complies with the minimum salary requirements under 600A, and with 602A's requirement that if the exempt employees receive a salary of at least $684 per week as all or part of their compensation. So STC has satisfied both the salary amount and salary basis tests. The DDs concede they satisfy the duties test as well. Therefore, STC has satisfied all the requirements for the highly compensated employee exemption. The DDs can test the exempt status solely because they also receive the rig bonuses for each day billable to a customer. The DDs claims are covered by two published cases from the Fifth Circuit. The first is Venable versus Smith International. Smith is an affiliate of STC that uses the same compensation plan. Thus, Venable is on all fours with this case. Their compensation is bifurcated. Venable was a 2024 decision? Yes, Your Honor. Is that right? Yes, Your Honor. And it's bifurcated between an annual salary and daily job bonus. The Venable plaintiffs made the same argument as the exempt employees and the additional compensation of the daily bonuses did not change their exempt status. Venable was followed in short order by Rodriguez versus City of Corpus Christi. There, Rodriguez was paid overtime in addition to her regular salary for a period. So she argued she was therefore not exempt for 604B. The court firmly rejected that argument. The court stated, quotes, the additional compensation did not destroy Rodriguez's status because the city still guaranteed her a minimum amount on a salary basis. The court continued, quotes, if an employee is paid a salary plus additional compensation, the reasonable relationship test does not apply. We need not consider section 541.604B or its reasonable relationship test. These two cases are decisive. Rodriguez is also significant, as was written by Judge Southwick, who was also a member of the Gentry panel. As such, if he had seen a conflict with Gentry, he would have mentioned it at that time. Further, S.T. has cited 10 other cases looking at similar facts and reaching the same result. These include the 10th Circuits, Wilson versus STC, a case involving measurement while drilling specialists, which is the other position at issue in this case. And the 10th Circuit reached the same conclusion, that as they were paid a salary, they need not look further in deciding that they meet the exemption. This court also reached the same conclusion in Hebert versus FC, FMC Technology Corporation. Further, in Boudreau versus STC, the Western District of Texas also reached the same conclusion in case involving the same DD position. The governing statute also supports STC. 29 U.S.C. Section 213A exempts EAP employees from the minimum wage and overtime provisions of the FLSA. After you take away the minimum wage and overtime provisions, the only thing left in the FLSA are the child labor provisions and the government of the DOL. In other words, Congress said that the EAP employees should not be subject to the same wage and hour requirements as the 1930s factory workers that the FLSA was enacted to regulate and protect. Instead, the terms and conditions of their hours and wages should be left to the private sector to develop in a way that best suits the needs of the industries and the employees and governed as a matter of private contract. That type of agreement is exactly what we have here. STC gave each of these DDs an offer letter, which they accepted, stating their compensation was a base salary plus bonus. These DDs certainly did not balk at being offered a position that provided them a $47,000 a year base salary plus total compensation of up to and over $200,000. That is what the DDs agreed to and that's what they're entitled to, nothing more. Now, Congress did grant DOL authority to determine who qualifies for the EAP and this Congress recently held a Mayfield versus Department of Labor that this includes establishing minimum salaries. As Justice Kagan said in the Helix decision, a salary is an imprimatur of exempt status. However, the DOL's authority is not without limit, as this court also stated in Mayfield. After all, the statute specifically exempts qualifying employees from overtime or minimum wage and to impose either by regulation would be contrary to the statute. The DOL has stated that the purpose of a minimum wage salary in 600A is to serve as a proxy for whether the position exercises sufficient judgment and discretion to qualify as exempt. That is a salary of at least $684 per week. SEC is not challenging that. The reasonable relationship test in 604 is an entirely different animal. Even though a salary is an imprimatur of exempt status, the DOL allows employees not paid on a salary basis to also qualify for the EAPs as long as they meet all the tests and they also meet the reasonable relationship requirement in which they must receive at least their normal working their normal weekly salaries with normal weekly earnings as hourly employees. But the DOL has never described the reasonable relationship test as proxy for exempt status. It is purely a guaranteed minimum payment. A reasonable relationship test applies only if 604B applies. Correct, your honor. And furthermore, 604B only addresses guarantees for hourly employees. It does not address people paid on a salary basis, which is 602A. This course Mayfield decision provides examples on the limit of the DOL's regulatory powers, such as when a regulation excludes too many people that would otherwise qualify as exempt. That is what happens in applying 604B to the reasonable relationship test to 602A salaried employees. How do we know this? The plaintiffs in Helix admitted that they met the duties requirement of the exemption. The reasons why they did not qualify is they were not paid a salary and they failed the reasonable relationship test. The duties here admit that they the duties requirement of the exemption. The reason why they're asking the court to award in their favor is purely based upon the reasonable relationship test because they also meet the 602A salary requirement. And if we look at the Boudreau case, which is currently pending before this court, Western District of Louisiana determined that the seven plaintiffs for whom STC asked for individual summary judgments all qualified for the exemptions. And the only reason that plaintiffs are appealing there is based on the reasonable relationship test. As these cases show, applying 604B reasonable relationship test to employees that meet the salary requirement of 602A would exclude exempt employees from the exemption on the basis of salary level only. In other words, 604B imposes a minimum wage requirement that salary must equal the full value of the job. As the controlling law shows, the DD's arguments is immaterial. As the DD's admit to receiving a biweekly salary and also meeting the duties requirement, Venable and Rodriguez state the exemption test has been met and the court should not look at 604B. That is not only decisive binding authority, it also makes sense. In reality, the DD's are asking the court to change the exemption test rather than apply it. They are asking the court to pull the reasonable relationship test out of 604B and apply it to employees meeting the salary requirements of 602A. And that to obtain by court action, what they did not get to by either agreement with the company, by the controlling statute, or the plain words of the controlling regulation. This court has recognized that DD's are not free to just pull requirements from another regulation, 604B, to override the requirements of 602A. That is not what the regulations say. The DD's primarily rely upon three cases to support their argument. The Supreme Court's Helix v. Hewitt decision and the two related cases of Pickens v. Hamilton-Riker and Gentry v. Hamilton-Riker. The facts in Helix are inapposite. Helix was paid a day rate, so of course the court applied 604A. As Hewitt was not paid a salary or anything other than his day rate, the Supreme Court simply did not look at what happens when an exempt employee is paid a 602A compliance salary and in addition receives a bonus that accrues on a daily basis. The Supreme Court, however, did provide guidance as to the relationship between 602A and 604B and how they interact. Specifically, there are two different separate paths by which the employee can meet the exemption test. They involve two different factual scenarios and the Supreme Court's language provides no basis for what the DD's ask for in this case, which is to take the reasonable relationship from 604B and apply it to employees who fully satisfy 602A. Gentry and Pickens suffered from the same limitation. Hamilton-Riker was originally paying their employees straight hourly wages of a guaranteed eight-hour pay. It converted the guarantee to a salary exactly equal to eight hours. The Sixth Circuit adopted the exact same reasoning. As both courts concluded the plaintiffs were paid on a daily hourly or shift basis, it was appropriate to apply 604B. The cases the DD's rely upon highlight the weakness in their case. They have no appellate court cases that have actually adopted and applied their reasoning to salaried employees, meaning the salary basis passed under 602A. Despite all this, the DD's are loathe to abandon their argument, so they grasp the straws. They turn to the district court's legal conclusion that the addition of a bonus to a 602A compliance salary raises a factual question as to whether they were paid on a salary basis. It doesn't, and that is not a factual issue. It's a conclusion of law. They mine STC's authority looking for minor factual differences that they attempt to use to distinguish those cases, but in doing so, they ignore what those courts' reasoning was in those cases, which is simply to say that as they had a 602A compliance salary, 604B simply does not apply. They also try to rework the regulations to require that 602A salary pay the employee for their full value of work for the week. That argument is directly contrary to the plain language of 602A, which says that the salary need only be part of their to say such things as it forbids employees from paying exempt employees for additional hours during the normal work week. So it's a word simply aren't in 604A, and this court disposed of that argument in Grindstein versus Granite Services International, where this court said that 604A was not meant to place additional hurdles on the 602A salary requirements. In some, the DD's cannot state the binding effects of Venable and Rodriguez, nor can the DD's avoid the facts that their arguments are contrary to the intent of Congress or the plain language of the DDO's regulations. Accordingly, their arguments fail. And Your Honor, if I could ease my reply time a little bit for about a minute, we also take issue with a number of the other court's decisions as well. The court did not follow Swells versus KLM Transportation in terms of referring this matter while this excuse me, the DD's also argued that the DD's argued that the court Your Honor, I will go ahead and save my reminding time just for rebuttal. Thank you. That's okay. All right. So you'll have four minutes left. Yes, Your Honor. All right. Thank you, Mr. Lombardi. Ms. Arbuckle. Good morning, Your Honors. May it please the court. In Helix, the Supreme Court says some nurses working on a per day or per shift basis are likely to meet the general roles duties test and their employers would assure them $455 per week in a heartbeat if doing so eliminated the need to pay overtime. That consequence is difficult if not impossible to reconcile with the FLSA's design. In other words, employers cannot affix skimpy weekly guarantees onto hourly or daily rate compensation structures to avoid paying overtime. But that is exactly what Schlumberger has done here. To that end, Helix explicitly discussed how to bring a company's compensation day rate workers into compliance with the FLSA without paying overtime wages. It provided two paths. Helix could either add a weekly guarantee that satisfies 604B to the day rate compensation and the easy math on that is just add all the day rates together and multiply by two to find the weekly guarantee they need to pay under 604B or pay them solely on a salary basis. It did not, as the Piggins court phrased it, leave room for a secret third option where an employer could evade the act merely by calling an arbitrary small portion of total compensation a weekly salary. Labels don't matter under the FLSA. Economic realities do. Post-Helix, this case finds itself in a tug-of-war between two Fifth Circuit cases. STC says that Venable compels reversal because it contains identical facts in the district court and Appelisse, false. It contains different facts and those different facts are material. On the other hand, you have Hamilton-Reicher, which Appelisse says controls and STC says does not control because the facts are different. Granted, some of the facts are different, but the different facts are not material. Employers love to argue that payment of any amount in excess of threshold on a weekly basis will automatically render any payment scheme compliant with the salary basis test just on the basis of 602a. That argument was brought before the court in Gentry and was rejected, but STC raises it here, so I will briefly address it. Helix tells us that Hewitt was not paid on a salary basis as defined in 602a. It says that section applies solely to employees paid by the week or longer. It is not met when an employer pays an employee by the day as Helix paid Hewitt. It might have been clearer if the Supreme Court had said that section applies to employees solely paid by the week or longer because that's what the regulations tell us. And what I mean by that is although 602a says that the salary is a predetermined amount constituting all or part of an employee's compensation, the only time salary basis analysis stops at 602a is when an employee receives weekly or less frequent predetermined compensation alone. When an employee is paid in part on some other basis, the analysis must proceed to 604 because Helix says we can't cart 604 off the stage. Gentry makes this clear where it notes two ways to satisfy the salary basis test, 602a and 604a. It joins them together as friends or the alternative route of 604b. 604a requires us to consider whether in part pay situations provide additional compensation for work beyond the normal work week. The dichotomy between 604a and 604b compensation was clearly illustrated by the court when it considered Gentry, a factual analog to Hewitt, and then later compared it to, and I'm not sure if I say this right, ABAIR, may be Hebert. These cases, usually in Louisiana it's ABAIR. I figured it was ABAIR but I never heard it said so. These cases gave practitioners everything they needed to understand in part pay cases. Gentry involved compensation for work within a normal work week. HRI paid Gentry hourly for all of his work but only guaranteed him eight hours of pay per week. The non-guaranteed compensation was wages, not additional compensation like a bonus or percentage of sales or straight time hourly compensation for hours worked beyond the normal work week. And in that regard, yes, 604a is not intended to be a hurdle to an employer who's really paying a salary but wants to be nice to a salaried employee who's suddenly having to work a lot overtime and they want to pay them a little something extra. That's fine. The problem is, in stark contrast, we have ABAIR. So here, FMC technology showed dispositively that it paid ABAIR a 604a compliance salary with additional compensation which ABAIR only earned in certain situations. ABAIR mostly worked in an office but when he worked in the office he only got his predictable weekly salary. Still, sometimes FMC needed him to go out and check in on field projects. That's beyond his normal work. So FMC paid him a little bonus in those weeks for going above and beyond. FMC was able to show dispositively many, many weeks, the majority of weeks where those bonuses were not paid. But STC has never failed to pay Gilbo for a single day when he worked doing his normal job on a drilling rig a day rate. If his normal scheduled work is on a rig, how can he get paid an additional bonus for it? This is where we have to look at 604b because it should have been easy, if it were true, for Schlumberger to prove that the rig day rate pay that Mr. Gilbo has put into contention was a bonus. Other employers have done it. And interestingly, STC did pay additional compensation over and above Gilbo's wages that without a doubt would not have affected the salary basis analysis on their own. These are ABAIR style 604a bonuses. For one, there was lead bonuses when he had to work with trainees or less experienced crew members. And then there were reduced crew bonuses when he had to work shorthanded. These bonuses were inconsistently paid for work outside of his normal job expectations. And those bonuses contrast sharply with the rig day rate pay that Gilbo earned every day he did his normal job. STC says the day rates are bonuses because of self-serving policy document that it has never shown was ever implemented. Despite having years to do so, on the day rate, the realities must govern. If Schlumberger had a policy document stating that it did partial day deductions, there's zero evidence that it ever did. Do I have a lawsuit? I don't. At best, there is a fact issue on the nature of the day rate compensation at issue, which remains for the trier of fact, as the district court has acknowledged. STC mostly hangs its hat on the Venable case. But Venable does not change anything here. As previously discussed, 604 requires us to consider the nature of any other compensation along with a supposed salary. And this is where we can see that Venable does not demand a result in this case, because the facts about the character of the non-weekly pay Venable earned do not match the non-weekly pay here. We can look at Venable's own testimony, which harmonizes with and departs from Gilbo. He said, if I worked in a shop for a week, I didn't get that day rate. Venable admits to doing normal work weeks, only earning only salary compensation. So 604A did apply to the court's satisfaction. In some respects, this is why Swales makes a lot of sense, because the directional drillers in Gilbo were not similarly situated to the reamers in Venable. So here, in stark contrast, Gilbo's testimony did not specify any type of work he could do apart from working on a rig. And STC's own records support his testimony. All of his working days were spent on a rig. The district court said it best, performing normal work on a customer's well site hardly equates to a performance incentive under 604A. We're remembering Gilbo was a directional driller, not a reamer like Venable. He couldn't work in an office or in a shop. He worked on drilling rigs, per defendant's records exclusively. He got day rate compensation for all the days he turned up for work minus training. And as the district court said there, employers don't usually pay employees just to attend training. Well, the focus in Venable was pretty much on guaranteed salary pay, as distinguished from the nature of the day rate compensation. To that end, if that's the way the court views it, then Gentry has to control over Venable, because what Venable will then misunderstand is the way that 604B works, because it does require payment of a guarantee on a weekly basis, right, on a salary basis. 604B says on a salary basis. But what 604B cares about is not how it comes in. It cares about what's protected, right? So let me address that real quickly to show you what a red herring, this paid-on-a-salary-basis argument is, okay? So this pay structure is functionally no different than Gentry. It's just differently packaged. This is where I tell you that facts that are different are not always materially different, all right? So the problem with the guarantee in Gentry wasn't how it was calculated, as in that it was based on hours. The court considered that from and said, with respect to the Tenth Circuit, the reasoning there doesn't quite track. It wasn't an issue specifically that it was not spread across the workweek or anything semantic. It was how little it protected Gentry from variable, unpredictable pay. In some respects, it's good that Gentry came first, because it's pretty obvious that HRI was trying to take a minimum salary amount. But it sort of locks you into thinking that that's the only way that 604B compensation could look. And that conflicts with how Hewitt said. You can put an additional salary on top of day rate pay, but it has to satisfy the reasonable relationship test. And that's where Schlumberger messed up. Were the DDs paid on a daily basis? Yes, they were, sir. Were they also paid on a bi-weekly basis? Yes. Great. And was the bi-weekly basis $1,800 and what was it, $2,600? $1,800 and $2,600. It was $913 on a week. Per week, times two is $1,826. So $1,826, two weeks. But... Hold on, hold on. Let me ask the questions. Yes. Was it subject to reduction? The total compensation was subject to reduction. Nope, not my question. Was the $1,826 subject to reduction? Yeah, you're on. No. So it was guaranteed. They were going to get $1,826 times what, $2,600? It was guaranteed. Or $913 times 52 is $47,000. It was a guarantee, just like in Gentry there was a guarantee. Got it. So the $47,000, whatever it is a year, guaranteed, and then they get extra day pay. Yes. I don't understand. The statute specifically says if they get it on a weekly or less frequent basis, it's guaranteed. It doesn't matter if they get bonuses on a less frequent basis or more frequent basis, I guess. The problem is it's not bonuses, right? It's just normal compensation for working an ordinary workweek, right? There's parts of it that are bonus, and there's parts of it that are just wages for showing up and doing your job. You're at war with 602A. I mean, 602A says, is it guaranteed on a weekly or less frequent basis? It obviously is. It's not subject to reduction. The case is over. I disagree with you, but that analysis, you do what Helix forbids, which is you cart 604B off the stage. Because I really want to explain that the way 604B views total compensation is sort of like a corvus, right? So it doesn't care how you cut up the slices of bread. It cares how much of the bread is protected. Yeah, but you keep assuming 604B applies. I mean, that's the entire question in the case, right? I understand, because a fact issue doesn't let us get to 604B yet. But I'm trying to understand if you're asking, could this case ever get to the 604B consideration? And yes, it could. How? Because the distinction between the bonuses in Venable was that they were not always earned. And the distinction with the day rate in Gentry, or sorry, in Gilboa is that they were always earned. Yeah, but we seem to be walking around in circles here, right? The question, the principal question presented is how do you get around 602A? And is there a material dispute, a genuine dispute material fact, excuse me, as to any of that? So that's why my question to you is, is the 913 subject to reduction? No. No, it's guaranteed to them. Correct. And then 602A says you can get more money. But that's totally fine. We never get to the reasonable relationship in the, you know, is it two to one or five to one or whatever the deltas are. So the issue is, you know, whether you view 602A as an absent bar to ever getting to 604A, just because an employer says they're paying a salary that's compliant. If that's the case, then I guess, but that's not been the way Gentry held, right? Because Gentry said 602A goes with 604A. You look at the quality of the peg. And if the purported salary rewards a true workweek, not some sliver, not some slice of the workweek, then yes, you comply with both together. Otherwise, you only do 602A if it's just salary compensation, right? Well, O'Mara is an engineer, as I understand it. I'm sorry, say again? I said O'Mara, O-M-A-R-A. He was a, he was a, is an engineer with substantial engineering training, et cetera. Is that correct? Gilbo was a directional driller. O'Mara is a NWD, which stands for measuring while drilling, and he's not at issue at this juncture. I don't understand that, but what you have, these different pay allocations, and you have Gilbo, who's a direct driller, and then you've got the, what you have is a well-filled worker, and then you also have an engineer that, a graduate engineer working, and they have different roles and sophistications. And the basic principle, you know, you know, you know over time if you're, if you are a salary employee, and so the salaries seem to respond to the different roles in which these two people on the oil rig work. We spent a long time since I've been on an oil rig, but I've had to watch them. And I know that they're, functionally, these two individuals are in a large sense workers in the same way, but in reality on the job, they are, the salaries reflect, they're different. They're different training, and the difficulties of their positions. That's my kind of a take on it. And I suppose, I don't necessarily agree with you about the duties, but if you look at Gentry, I don't really disagree with you about the duties, but if you look at Gentry, he was an extremely, like, well-versed engineer. They're both experienced workers. Yeah, a hundred percent. But I look at it, I look at Gilbrow, and I look at Omara, and thinking in terms, in those terms of trying to put some flesh on these things, some of the numbers, and looking at what their role were, was a kind of on a simple, simplistic, overarching thing that ain't no overtime if you're salaried. And Omara and Gilbrow were both paid the same way, right? It's not, it's not the case that Omara was paid differently than Gilbrow. Okay. Can we go back to Hewitt real quick? So what was Mr. Hewitt's guaranteed weekly salary? It was purported to be the first day rate. I'm sorry? It was purported to be the first day rate. Right. His guaranteed weekly salary was zero. He was paid $913 a day. He worked one day, he got 913. He got two days, he did 913 times two. He did 14 days, he got 913 times 14. He did not have a guaranteed salary on a weekly or less frequent basis. His guaranteed salary on a weekly or less frequent basis was zero. Hewitt claimed that the first day was guaranteed. Well, the regulation says you don't have to pay somebody who works zero days of the week. So yes, in a sense, his guaranteed salary was when he worked the first day, he was going to get 913. But the point that the court emphasizes over and over and over, and that our mock court emphasized over and over, was that it can be computed on a biweekly basis as his was, but it was accrued on a daily basis. It depended on the number of days. So my question to you remains, do you have any argument that the nine, I've already forgotten your number, 913, that is the guaranteed weekly basis, could it ever go down for the DDs? I've already answered that it cannot. But what I am saying to you, Your Honor, is that you're doing an apples and orange comparison. Because what can go up and down is 80% of my client's compensation is variable. So it's pretty much the same as what happened in Helix, and as what happened in Gentry. Because the problem is not what is guaranteed, it's what's protected. And that's why 604B exists at all. So my concern is if you focus so much on the fact that a defendant says we pay an amount of money that's not subject to a reduction, which is exactly what they said in Gentry, right? We pay this amount of money, it's not subject to reduction. It's eight hours of pay. It's not compliant with 604B, it runs afoul of Helix. So, and one of the points, oh, I'm sorry, I'm so out of time. All right, thank you. Thank you, Your Honor. All right, Mr. Lombardi, four minutes. A few points, Your Honor. To begin with, the most significant difference between 602A and 604B is salary versus guarantee. 604B is a guarantee to hourly employees who are expected to be paid for every hour, and the DOL was concerned that they would be shorted if they only had a guarantee during a short week. So they set a minimum on a short week. Here we are dealing with true salaries, biweekly salaries, that are a significant amount of money at the 913 per week level. And furthermore, Schlumberger goes above and beyond. They receive that salary 52 weeks of the year, not just every week they worked. We're dealing with oilfield employees who are working two weeks on, two weeks off, and they're getting 70% utilization rates. So there's a lot of time during which they're not getting bonuses, but they're still getting paid salary. That's the purpose of why these people are exempt from the FLSA requirements. It's so that with these highly paid, highly skilled employees, the companies can make compensation plans that work for both the employees and the industry, and they should have the freedom to do that. And that's exactly what the FLSA and the regulations allow, and that's why they're going that way. Your Honor, the additional points I want to bring up, this case, as we've discussed, there's also an MWD, which means the most likely is that it'll be remanded at least for that issue. And there were issues in terms of applying swales, where the court did not consider this issue to be a threshold issue, but rather part of the affirmative defense. The fact that plaintiffs, as you have heard, are trying to actually change the exemption test means that some court has to approve that this is acceptable for an exemption test, and that's a threshold issue. Also, plaintiffs were wrong in terms of saying that because this goes to the merits that swales doesn't apply. Swales specifically says that you can and should consider the merits if it involves a threshold issue or whether notice should go out. That's why it applied it to the issue of whether or not they actually qualified for the act. Further, Your Honor, there were other holdings that the court made, such as that STC was judicially stopped from arguing whether or not the regulations were at issue, or they were attempting to change the regulations or interpret them in a proper manner. And the court said we were stopped from that because we had qualified the people as exempt. That's not grounds for estoppel. The court also said that we were barred from bringing forward certain arguments for the remainder of the case because we did not include them in our motion for partial summary judgment, but only opposing certification. That's directly contrary to what Rule 56 says, and that the party is free to bring just limited issues or claims on partial summary judgment. And there's several other issues that the court made holdings that we do not believe were properly in accordance with the law that also need to be addressed upon remand. We would also ask that given the Swales issue, one of the issues in Swales was the potential negative effect, a lasting effect that improper certification could have, and we believe that's present here. In this case, notice has gone out. We have had people enrolled. These people have already communicated saying that we believe that you have a potential claim. And as the court knows, most FLSA claims are brought by ex-employees. So these people already have been told that they have a potential claim that maybe they can bring. So, Your Honor, as part of the remedies on going back, we would like this court to instruct the district court to order the plaintiffs to send out another notice saying that this notice was improperly granted, it was, and that accordingly, we do not see that you have a claim, just to remove that stain that's already been put. Thank you, Your Honor. Yeah. All right. Thank you, Mr. Lombardi. Your case and all of today's cases are under submission. And the court is in recess until nine o'clock tomorrow. Thank you.